This suit was instituted by the plaintiff on August 14, 1945. The petition alleges that on September 2, 1944, while employed as an "edgeman" by T. J. Moss Tie Co., Inc., at its mill in Sabine Parish, Louisiana, plaintiff met with an accident which rendered him permanently and totally disabled from doing work of any reasonable character, and that he is entitled to workman's compensation for four hundred weeks at the rate of $18.72 per week. The suit was directed against the tie company and its insurance carrier, Consolidated Underwriters.
These defendants answered, denying that plaintiff was in the employ of the tie company, and specially alleged that the employment of plaintiff was with Weldon and Daniels, who had a contract to deliver ties to the T. J. Moss Tie Co., Inc. The defense was also made that plaintiff was not disabled but that he had been paid compensation *Page 20 
at the rate of $18.72 weekly for thirty-four weeks, aggregating $202.00 which was paid through "error of law and fact." Judgment in reconvention was asked for the amount paid.
On February 27, 1946, plaintiff filed a supplemental petition in which he joined Elmo Weldon and J.W. Daniels as defendants, alleging that Weldon and Daniels, and the other defendants were solidarily liable to him for the compensation claimed. Weldon and Daniels filed a plea that the claim was barred by the prescription of one year. They later filed an answer in which it was admitted that plaintiff was in their employ on the day of the alleged accident but denied that he suffered any disabling injuries. The plea of prescription was maintained and the suit was dismissed as to Weldon and Daniels. There was judgment on the merits in favor of the tie company and its insurance carrier rejecting plaintiff's demands. The reconventional demand was likewise rejected. Each side has perfected suspensive and devolutive appeals which are now before us for consideration.
It is not disputed that the employment of plaintiff was hazardous and is within the purview of Act 20 of 1914 as amended, and that at the time of the accident he earned wages aggregating $28.80 per week. Nor is there any dispute that Consolidated Underwriters carries the workmen's compensation insurance for T. J. Moss Tie Co., Inc.
The record shows that the duties of plaintiff were to handle cross ties and slabs of lumber which weighed from one hundred to two hundred pounds each. On the date alleged plaintiff accidentally slipped and fell upon his back across a roller bed. The accident occurred on a Saturday and he was taken to his home where he remained until the following Monday at which time he reported to the mill for work. He testified that he could not perform his duties and that he was thereupon taken to the Many Sanitarium where Dr. S.F. Fraser had x-rays made of his injured back; that plaintiff was ordered to bed and remained in the hospital for about twelve days at the end of which time his back and body were placed in a plaster cast and he was allowed to return to his home. This cast was worn by plaintiff for a period of between three and four months.
Plaintiff is a white man thirty-one years of age with a tenth grade education. He was eligible for military service and was physically examined by the United States Army physicians during March, 1944 and was placed in classification 1-A under the Selective Service Act, and inducted into service on February 22, 1945, a little less than six months after the alleged injury. He was discharged from military service on December 12, 1945, after a service of nine months and twenty-one days. The plaintiff testified that he was classified as being fit only for limited service in the Army, but this fact is not disclosed by his discharge certificate or by the Separation Qualification Record which was issued at the time he received his discharge. The discharge certificate does not on its face show that plaintiff was discharged by reason of any physical disability and we gather from the record that Chance was mustered out of service for the reason that he had a wife and three children dependent upon him.
Upon returning from the service, plaintiff rejoined his family at Hornbeck, Louisiana, and he testified that he has never been able to return to any kind of work because of the injuries existing in his back. Both he and Mrs. Chance stated that he could not do any of the chores around their home and that on the few occasions when he attempted work around the house it was necessary for him to be confined to bed for a few days after each attempt. They further stated that it was necessary to hire help ill connection with the small vegetable patch which they operated.
As is usual in this type of back case, there is conflict in the expert medical testimony. Dr. S.F. Fraser testified that he made his first examination of plaintiff on September 7, 1944, and that he ordered plaintiff to be confined to bed in a hospital where he remained for twelve days; that during this period x-rays were made and plaintiff's back was placed in a rigid plaster cast; that plaintiff was then permitted to go to his home and was instructed to return to Dr. Fraser every fifteen days or *Page 21 
so for further examination, but did not return to Dr. Fraser until December 5, 1944. Dr. Fraser testified that while Chance wore the plaster cast for something over one hundred days, it was unnecessary for him to have done so and that it was only through plaintiff's disobedience in not returning to the doctor's office as directed that the cast remained on his back for that period. Dr. Fraser stated that when the x-ray pictures were made he examined them before they were completely dry and that he was misled by his interpretation of the wet pictures that there was a "little mark across the transverse process of the first lumbar vertebrae" and that he assumed that Chance had cracked that transverse process, and that being of such opinion at the time he ordered plaintiff to bed and applied the cast. Dr Fraser testified that he later determined that his original impression was in error and that there was no fracture to plaintiff's back but that the difficulty resulted from a congenital extra joint and that if there was any deformity in plaintiff's back or spine it was caused from the congenital condition. On cross-examination the doctor stated that he also noticed a knot or swelling in the upper part of plaintiff's lumbar area and that he thought it was due to the bruise that plaintiff had sustained. In December, when Dr. Fraser last examined plaintiff he could detect no muscle spasms in the area of the back and although plaintiff complained of soreness he saw no reason for that condition to exist. The x-rays taken at that time according to Dr. Fraser showed no indication or evidence of a fracture. It was his opinion that the plaintiff was then able to return to his usual duties.
Dr. J.R. Brown stated that he first examined Chance on January 22, 1945, and in connection therewith had x-rays made. He found that the back presented some rigidity of the left lumbar muscles and that plaintiff was slow on movement forward, backward and upon rotation and complained of pain; that the only positive sign was that of twenty-two eosinophilis, which in common parlance is termed "hookworm." Dr. Brown again saw plaintiff on June 19, 1946 and he found some rigidity present in the muscles of the back, but he could not determine whether that condition was involuntary or was brought about by the voluntary contraction of the muscles. He also noticed' what he termed a congenital non-union of the right lateral process of the first lumbar vertebrae and also congenital deformities of the left and right lateral process of the third lumbar vertebrae. It was Dr. Brown's opinion that Chance was physically able to return to his employment.
Dr. O.L. Sanders made his first examination on January 9, 1946, and it was his opinion that the x-rays then taken showed an old fracture of the transverse process of the first lumbar vertebrae on the left side, and also a lateral curvature of the lumbar spine, which he too stated was congenital. Dr. Sanders stated that he next saw plaintiff about June 9, 1946 and that he noted no change in his condition.
Plaintiff testified that the Army authorities made x-rays of his back, but these have not been produced nor have any of the Army physicians testified, and we have no way of determining the result of the x-rays.
[1] The record as a whole convinces us that if there is any disability in plaintiff's back it does not exist because of his fall at the tie mill. The three medical experts stated that there are congenital deformities in plaintiff's spine and it is our conclusion that whatever trouble plaintiff might experience is caused from these deformities and not as a result of the accident. Plaintiff, after the accident, served in the Army for a period of nine months and twenty-one days. His discharge was not shown to be for physical disability. Plaintiff admitted on cross-examination that this is his fourth claim for compensation. During 1939 he brought a suit in Leesville, Louisiana, based upon an asserted loss of use of his right hand. He received compensation for several months and was, in a lump sum settlement, paid the sum of $800.00. The total compensation for this injury amounted to $2500.00. Sometime afterward he filed a suit for injuries to his shoulder from which he netted $600.00 His third claim was for injuries *Page 22 
to his head or face and his employer paid him $450.00 in settlement.
[2] The defendant insurance company paid to plaintiff compensation at the rate of $18.72 per week for thirty-four weeks. Some of these payments were made after he had been inducted into the Army and further payment was stopped after the company learned of that fact. The payments by the insurer for the tie company do not constitute an admission of liability for compensation. Act 20 of 1914, Section 18, as amended.
[3, 4] It is contended by counsel for the tie company and its insurer that plaintiff was over-paid and judgment in reconvention should be given for these excess payments. Plaintiff was undoubtedly entitled to some compensation, particularly covering the period during which the company doctor had him incased in the plaster cast. There is no definite proof as to when the disability ceased, and since the burden is on a defendant to establish a claim in reconvention, we do not find that the district court was in error in rejecting this claim.
In view of the conclusion we have reached on the merits of this case, it is unnecessary to pass upon the plea of prescription and the other special defense.
The judgment appealed from is affirmed at plaintiff's costs.